IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JINA HUNT o.b.o BENNIE HUNT | § | |
| (DECEASED WAGE EARNER), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:13-CV-141 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff JINA HUNT, on behalf of her deceased husband, Bennie Hunt, brings this cause

of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant

CAROLYN W. COLVIN, Acting Commissioner of Social Security (Commissioner), denying

plaintiff's applications for disability benefits.  Both parties have filed briefs in this case.  For the

reasons stated below, the undersigned United States Magistrate Judge recommends the

Commissioner's decision finding plaintiff not disabled and not entitled to disability benefits be

AFFIRMED.

I.
STATEMENT OF THE CASE

Plaintiff filed an application for disability insurance benefits on February 7, 2010, alleging

he had been disabled since December 13, 2009, because of symptoms related to diabetes, muscular

dystrophy, chronic foot pain, neuropathy, and an amputated right foot.  The commissioner denied

plaintiff's initial application and denied it upon reconsideration.  A hearing was held before an

Administrative Law Judge on June 28, 2011.

The evidence presented at the administrative hearing showed plaintiff was forty-four-years old at the time of the onset of the alleged disability, with a high school education and the ability to communicate in English.  Plaintiff testified he was last employed as a truck maintenance technician but was forced to stop working after his foot was amputated.  Plaintiff stated the lack of a portion of his right foot caused him to experience difficulties balancing, and his prosthesis caused him pain when he stood for any period of time.  Plaintiff claimed he was unable to stand for more than three to five minutes at a time without experiencing discomfort from pressure caused by weight shifting to his left hip.  In addition, plaintiff struggled to control his diabetes and suffered from back pain caused by muscular dystrophy.  Plaintiff said he was able to wear his right foot prosthesis for only three to five hours before blood began to pool, causing his stump to swell.  In order to relieve the swelling, plaintiff said he had to elevate his foot above his heart, "Basically all day long . . . if [he is] not doing anything else."  Tr. 17.  While unable to work at his old job, plaintiff testified that he was able to do work around the house by vacuuming, doing dishes, and caring for his basic personal hygiene.

A vocational expert testified during the administrative hearing that plaintiff had past relevant work experience as a truck driver, which is a medium exertional level, semi skilled job, and as a mechanic, which is a heavy exertional level, skilled job.  Tr. 19.  The vocational expert testified that while those jobs could not be performed at a sedentary level, sedentary, unskilled labor existed in the national market.  Specifically, the vocational expert testified that someone capable of performing work at a sedentary level, with plaintiff's specified limitations, would be capable of working as an order clerk, of which there were 30,000 jobs nationally and 2,300 regionally; a printed circuit board assembler, of which there were 39,000 jobs nationally and 2,200

regionally; and as a final assembler, of which there were 18,000 jobs nationally and 1,500 regionally. Tr. 19-20  In response to a question from the ALJ, the vocational expert testified workers in those fields would be able to elevate their feet from twelve to fourteen inches from time to time, but not any higher than that.  Tr. 20.

Dr. Bullard, plaintiff's treating physician, submitted a form stating that plaintiff was suffering from neuropathy and an amputated right foot.  In spite of these conditions, the doctor indicated plaintiff was capable of safely lifting five pounds, could stand for up to two hours, could walk for up to two hours, and could sit up to four hours in an eight-hour work day.  Additionally, the doctor believed plaintiff could reach, finger, handle, feel, see, hear, and speak, but would not be able to push or pull.  The doctor also believed plaintiff would be unable to climb, balance, stoop, crouch, kneel, or crawl.  The plaintiff's condition, according to the doctor, would prevent him from working around heights, moving machinery, dust, or chemicals.  Dr. Bullard also checked a box indicating he believed plaintiff was permanently disabled.

Plaintiff's other treating physician, Dr. Dodson, indicated in the form he submitted that plaintiff suffered from an amputated right foot and a chronic condition in his right leg.  Dr. Dodson indicated plaintiff could stand for up to two hours, walk up to two hours, and sit up to four hours in an eight-hour work day.  The doctor indicated plaintiff could safely lift up ten pounds.  Plaintiff was deemed capable of reaching, fingering, handling, seeing, hearing, and speaking, but not pushing, pulling, or feeling.  He would not be able to climb, balance, stoop, crouch, kneel, or crawl.  Further, his impairments would prevent him from working around heights, vibrations, temperature extremes, and moving machinery.  This treating physician also checked a box indicating his belief that plaintiff was permanently disabled.

Doctor Frederick Cremona, a non-examining physician, performed a Physical Residual

Functional Capacity Assessment and reached the following conclusions: plaintiff was capable of lifting twenty pounds occasionally and ten pounds frequently.  He was capable of standing and walking for about six hours and sitting for six hours in an eight-hour workday.  He suffered no limitation on his ability to push or pull, and had no postural, manipulative, visual, communicative, or environmental limitations.  Finally, Dr. Cremona concluded that plaintiff's alleged limitations were not supported by the record, and that plaintiff was not prevented by his limitations from sustaining a routine work week.  Tr. 489-96.

In the administrative decision the ALJ found that plaintiff met the insured status requirements of the social security act and had not engaged in substantial gainful activity since December 13, 2009.  The ALJ held plaintiff was afflicted with the severe impairments of diabetes mellitus, venous insufficiency, foot amputation, muscular dystrophy, and obesity, but those impairments (or a combination thereof) did not qualify as "listed impairments."  Tr. 37.

The ALJ then found the plaintiff was capable of performing sedentary work on a sustained basis, for an indefinite period of time.  But the ALJ also found "he must elevate his foot from time to time about 12 inches."  Tr. 40.  The ALJ found that while some of plaintiff's medically determinable impairments could reasonably cause some of the alleged symptoms, the plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment.  The ALJ also found that "Mr. Hunt testified he would be able to perform sedentary work."  Tr. 42.  He held that Drs. Bullard and Dodson each stated plaintiff was capable of performing work falling within the province of sedentary work in contradiction of their findings that plaintiff was permanently disabled.  As such, the ALJ gave the doctors' opinions little weight as to the conclusion that plaintiff was permanently disabled.

Further, while plaintiff had past relevant work experience as a truck driver, which is semi-skilled, medium work, and as a mechanic, which is heavy, skilled work, he was unable to return to such work because it would require him to perform duties beyond the limits of his exertional capabilities.  Lastly, the ALJ found that although plaintiff is incapable of performing the full range of sedentary jobs because of additional limitations, based upon the testimony of the vocational expert, sufficient jobs exist in the national economy that plaintiff was capable of performing.  Tr. 43-44.

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made.  *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989).  Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion.  It is more than a mere scintilla and less than a preponderance."  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  To determine whether substantial evidence of disability exists, four elements of proof must be weighed:  (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) plaintiff's subjective evidence of pain and disability; and (4) plaintiff's age, education, and work history.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).  If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding.  *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).  Conflicts in the evidence are to be

resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir.

1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence"

will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.

1983).  Stated differently, the level of review is not *de novo*.  The fact the ALJ *could* have found

plaintiff to be disabled is not the issue.  The ALJ did not do this, and the case comes to federal

court with the issue being limited to whether there was substantial evidence to support the ALJ's

decision.

III.
ISSUE

The ALJ found plaintiff not disabled at Step Five of the five-step sequential analysis.

Consequently, the Court is limited to reviewing only whether there was substantial evidence in the

record taken as a whole to support a finding that plaintiff had the ability to perform other work that

exists in significant numbers in the regional and national economies, and whether proper legal

standards were applied in making this determination.  Plaintiff presents the following issue for

review:

> Whether the ALJ's residual functional capacity assessment included all of
> plaintiff's limitations that are supported by the record.

IV.
MERITS

Under SSA regulations, the ALJ will always consider medical opinions, *i.e.*, statements

from physicians that reflect judgments about the nature and severity of the plaintiff's impairments,[1]

with the rest of the relevant evidence received.  20 C.F. R. § 1527(a)(2), (b) (2012).  If any of the

evidence, including any medical opinions, is inconsistent with other evidence or is internally

---

[1]Including the plaintiff's symptoms, diagnosis and prognosis, what the plaintiff can still do despite impairments, and the plaintiff's physical restrictions.

inconsistent, the ALJ will weigh all of the evidence.  20 C.F.R. § 1527 © (2012).  Every medical

opinion received is evaluated.  20 C.F.R. § 1527(d) (2012).  The medical opinion of a *treating*

source[2] will be given "controlling weight" if it is well-supported by the medical evidence *and* is not

inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  When a

treating source's opinion is not given "controlling weight," an ALJ will consider the following

factors in deciding what weight to give to the treating source's opinion:  (1) the length of the

treatment relationship and the frequency of examination, (2) the nature and extent of the treatment

relationship, (3) the extent to which the opinion is supported by other evidence, (4) the consistency

of the opinion with the record as a whole, (5) the doctor's specialization, and (6) other relevant

factors.  *Id.*  The ALJ must give specific, "good reasons" in his decision for the weight given to a

treating source's opinion, and the reasons must be supported by the evidence in the case record.

*Id.*; SSR 96-2p, 1996 WL 374188 at *4-5.  An ALJ may give "little or no weight" to a treating

physician's opinion "when good cause is shown."  *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir.

2000).  Good cause for rejecting a medical opinion is shown when the treating physician's

evidence is (1) conclusory, (2) unsupported by medically acceptable clinical, laboratory, or

diagnostic techniques, or (3) is otherwise unsupported by the evidence.  *Id.*  A treating physician's

opinions are not conclusive, and the ALJ may "reject the opinion of any physician when the

evidence supports a contrary conclusion."  *Id.* at 455.

    Plaintiff complains that the ALJ erred by incorrectly stating the limitations plaintiff's

treating physicians placed on plaintiff's activity.  Plaintiff specifically argues the ALJ erred by

---

[2]A treating source is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [the plaintiff], or has provided [the plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the plaintiff]."  20 C.F.R. §§ 404.1502, 416.902.  A treating source is the medical source  most likely to be able to provide a detailed, longitudinal picture of the plaintiff's medical impairments.

stating that Dr. Bullard found plaintiff was capable lifting ten pounds, when actually Dr. Bullard limited plaintiff to being able to lift five pounds.  Plaintiff is correct.  The form filled out by Dr. Bullard states that plaintiff is capable of lifting a maximum of five pounds (Tr. 561), and the ALJ stated that Dr. Bullard said plaintiff was capable of lifting ten pounds.  While the ALJ erred in so stating, the error is not reversible.

The ALJ did not reversibly err because his finding that plaintiff was capable of lifting up to ten pounds was supported by substantial evidence.  While Dr. Bullard thought plaintiff capable of only lifting up to five pounds, plaintiff's other treating physician, Dr. Dodson, found that plaintiff was capable of lifting up to ten pounds.  Likewise, Dr. Cremona in the Residual Functional Capacity Assessment found that plaintiff was capable of lifting ten to twenty pounds.  Were Dr. Dodson's findings not present, and if there were a conflict only between Dr. Bullard and Dr. Cremona, it would probably be error for the ALJ to dismiss Dr. Bullard's opinion in favor of Dr. Cremona's opinion.  As a treating physician, Dr. Bullard's findings would be given greater weight.  But here, the conflict is between Dr. Bullard and Dr. Dodson, and Dr. Dodson is also a treating physician.  Thus, the ALJ's finding that plaintiff was capable of lifting up to ten pounds is supported by substantial evidence in the record.

Plaintiff also argues the ALJ erred in holding plaintiff was capable of performing sedentary work because plaintiff's treating physicians thought plaintiff only capable of sitting for two to four hours in an eight hour workday.

Both physicians, Doctors Bullard and Dodson, reported that plaintiff was capable of standing up to two hours, walking up to two hours, and sitting for up to four hours in an eight hour work day.  The Court understands plaintiff's argument to be that sedentary work requires the ability to sit for up to six hours and, therefore, requires sitting for longer than Drs. Bullard or

Dodson found plaintiff capable of.  While courts have held that sitting *"should generally* total approximately six hours of an eight hour work day" for sedentary work, courts have not held that a person capable of sitting for only four hours (but capable of walking for two hours and standing for two hours) is incapable of performing sedentary work.  *See Johnson v. Astrue*, 291 F. App'x 548, 551 (5th Cir. 2008).  Further, both of plaintiff's treating doctors stated plaintiff would be capable of performing some combination of sitting, standing, or walking for up to eight hours in an eight hour work day.  More importantly, plaintiff testified he would be capable of performing a job where he would be able to sit all day, and answered in the negative when asked if his foot "would get in the way or be a problem."  Tr. 13.  The evidence in the administrative record is enough to reach the "substantial evidence" level required to support the ALJ decision.[3]

Plaintiff also claims that because he was required to elevate his leg above his heart for most of the day, the ALJ erred in finding plaintiff was capable of performing sedentary work.  This restriction, however, is not supported by the record.  The only source of evidence for plaintiff's alleged need to elevate his leg above his heart was plaintiff's testimony when answering questions from his lawyer, some of which were leading, and which testimony was inconsistent with earlier testimony.  Indeed, the only other source plaintiff cites in support of his alleged need to elevate his leg is the clinical notes of nurse Joy Freeman, taken immediately after plaintiff's amputation, which advised plaintiff to keep his foot elevated while sitting.  Tr. 572.  These notes, however, make no mention of the length of time plaintiff would need to continue his foot-elevation treatment, the degree to which his foot needed to be elevated, or whether he would need to continue such elevation indefinitely.

---

[3]Plaintiff's testimony was contradictory in some respects.  That fact, however, does not render such testimony unworthy.  Instead, it is for the ALJ to determine the credibility of the testimony.

In addition to contradicting his own testimony that he could sit all day, plaintiff's testimony was also contradicted by plaintiff's treating physicians.  Both doctors indicated plaintiff was capable of some combination of sitting, standing, and walking for a total of eight hours in an eight hour workday, without any restriction for leg elevation.  This directly contradicts plaintiff's assertion that he would need to spend the majority of his day laying on his back with his foot elevated, because such foot elevation  would preclude sitting, standing, and walking for eight hours in an eight hour work day.  The ALJ was entitled to make the determination to accept the physicians' statements while discounting plaintiff's statements and did not commit error by so doing.

Plaintiff also contends the ALJ *must* have credited his statement that he must elevate his leg because in his RFC determination, the ALJ stated: "He must elevate his foot from time to time about 12 inches."  Tr. 40.  Plaintiff argues this indicates the ALJ credited plaintiff's statement but then committed error by "playing doctor" and finding plaintiff only needed to elevate his foot twelve inches.  Here, however, there were no objective medical findings regarding recurrent, excessive swelling in plaintiff's right leg, much less *any* prescribed treatment for such a condition, including elevation of plaintiff's legs *to any level* or a prescribed frequency of elevation.  Since the ALJ would not have erred if he had found no elevation requirement, it is difficult to see how he could have erred by finding an elevation requirement, albeit, a lesser one.  There is no evidence the ALJ credited plaintiff's testimony unequivocally and without question.  To the contrary, the ALJ specifically stated that to the extent plaintiff's testimony contradicted his RFC finding, the plaintiff's testimony was deemed to be not credible.  Thus, the ALJ discounted plaintiff's testimony, and the foot-elevation limitation he did include in plaintiff's RFC was an accommodation above and beyond the limitations set out in the medical evidence.  The ALJ's

decision is not deemed error because he imposed limitations on plaintiff's RFC beyond that which were in the medical record.

Although it is more difficult to determine from a cold record, the claimant, Mr. Bennie Hunt, appears to have been a hard working individual all of his life, but who developed significant medical problems and complications from diabetes in his later years.  It further appears his testimony at the administrative hearing was credible in many respects.

His position in this appeal, however, is weakened by what, in the opinion of the undersigned, appears to be statements which are painfully honest and straight forward.  For example, at one point Mr. Hunt testified that he saw no reason he could not do a job where he sat for eight hours if someone would hire him.  Tr. 13.  Later, plaintiff stated, in response to a question by his attorney, that he did not know whether he could do a job where he sat all day, that he would have to find out "when that time comes."  Tr. 26.  Then, in response to the question, "Why can't you do that (sedentary work) now then?  Why are you here (at the hearing)?" plaintiff stated, "good question.  I don't know how to answer."  Tr. 26-27.

The claimant's candor, while admirable, does not aid his disability appeal.  In fact, his testimony provides some of the evidence necessary to support the ALJ's determination of not disabled based upon an ability to perform certain sedentary jobs.  Plaintiff's testimony, together with the other evidence, is sufficient to reach the level of "substantial evidence" required to affirm the administrative decision.

V.
CONCLUSION

The ALJ has the sole responsibility for determining a claimant's disability status.  The ALJ's decision reflects he considered and evaluated all of the medical evidence of record in

addition to statements made by plaintiff during both the application process and the administrative hearing.  The ALJ appropriately weighed the medical source opinions of record, provided good cause for the amount of weight afforded each, and set forth adequate reasoning for his findings. The medical records appear to be consistent with, if not less restrictive, than the ALJ's RFC finding.  The Court finds there was substantial evidence in the administrative record to support the ALJ's finding as to plaintiff's RFC.  Plaintiff's claim should be denied.

V.
RECOMMENDATION

It is the recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of benefits be AFFIRMED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___10th___ day of September 2014.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)©, or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).